# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**RACHEL HERRERA, by and through
her legal guardian Stan Herrera, and
STAN HERRERA, in his individual
capacity**,

       Plaintiffs,

  vs.                                                                                                          No. **CIV. 03-0832 MCA/WDS**

**LOS LUNAS COMMUNITY PROGRAM;
NEW MEXICO DEPARTMENT OF HEALTH;
MATTHEW McCUE; in his individual and official
capacities; COLEEN FIELDS, in her individual
capacity; JOHN SMALL, in his individual
capacity; CARINO CASE MANAGEMENT
INC., a New Mexico for profit corporation;
GABRIELLA RAMOS, in her individual and
official capacities; ALEX VALDEZ, in his
individual capacity; and PATRICIA T.
MONTOYA, in her individual capacity,**

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants' Cariño Case Management, Inc. and Gabriella Ramos' Motion for Summary Judgment on Counts III and IV Alleging Constitutional Rights Violations* [Doc. 64], filed October 15, 2004. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion in part and strikes the motion in part.

## I. BACKGROUND

On July 16, 2003, Defendants removed to the United States District Court for the

District of New Mexico a state-court action commenced by Plaintiff Stan Herrera, the brother and legal guardian of Plaintiff Rachel Herrera (Rachel), on behalf of Rachel and in his own right. [Doc. 1]. Plaintiffs' complaint sought money damages and injunctive relief to compensate for injuries sustained by Rachel, a 34-year-old woman with developmental disabilities, while in the care and custody of Defendants. In addition to the claims asserted on behalf of Rachel, Stan Herrera asserted individual claims for intentional infliction of emotional distress and loss of consortium. At all times relevant to this action, Rachel was a resident of Wade House, a group home supervised and administered by Los Lunas Community Program, a division of the New Mexico Department of Health. [Id., Exh. A, attached July 10, 2003 *Complaint for Money Damages and Injunctive Relief Asserting Claims Imder* (sic) *the Tort Claims Act, 42 U.S.C. § 1983, the New Mexico Constitution and New Mexico Common Law*].

On September 17, 2004, this Court entered an *Order Approving Settlement and Distribution of Proceeds* [Doc. 59]. That order states, in part, as follows: "This Settlement is between Plaintiffs and Los Lunas Community Program, New Mexico Department of Health, Matthew McCue, Coleen Fields and John Small. This Settlement shall not affect the rights and liabilities remaining between the Plaintiffs and Defendants Carino Case Management, Inc. and Gabriella Ramos." [Id. at 2]. Thereafter, at the October 5, 2004 pretrial conference on this matter, counsel for the remaining Defendants, Cariño Case Management (CCM) and Gabriella Ramos, queried whether claims brought pursuant to 42 U.S.C. § 1983 survived the dismissal of state Defendants Los Lunas Community Program,

2

New Mexico Department of Health, McCue, Fields, and Small.  [See Doc. 62, "Clerk's Minutes," Oct. 5, 2004].  This Court directed the parties to brief that issue.  [Id.].  Defendants responded with a motion for summary judgment and memorandum in support of thereof.  [See generally Docs. 64, 65].  Plaintiffs then filed *Plaintiffs' Response to Defendants' Motion for Summary Judgment on Counts III and IV.*  [Doc. 76].  The issue is now fully briefed and ready for resolution.

## II. ANALYSIS

### A. Standard of Review

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  See id. at 248.  Judgment is appropriate as a matter of law if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not

necessarily need to be presented in a form admissible at trial). See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998). "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotation omitted). Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

### B. The Parties' Contentions

#### 1. Defendants

Defendants move for summary judgment on grounds that (1) they were not "state actors" for purposes of 42 U.S.C. § 1983 at any times relevant to Plaintiffs' complaint; and (2) the complaint, which rests on negligence, fails as a matter of law. [Doc. 64]. In support of their argument, Defendants submit that to state a claim pursuant to § 1983, a plaintiff must show both a deprivation of a right secured by the Constitution or by federal law and that that deprivation was caused by an individual acting under color of state law. For purposes of their motion, Defendants concede that involuntarily and voluntarily committed developmentally disabled persons such as Rachel enjoy substantive due process interests in adequate medical treatment, safe conditions of confinement, and appropriate food and hydration. [Id. at 8]. Defendants argue, however, that nothing in their conduct can be

4

deemed "state action" such that § 1983 liability attaches. [Doc. 65 at 7]. Specifically, Defendants contend that (1) the nexus between their conduct and the state is not sufficiently close to allow that conduct to be treated as that of the state itself; (2) it cannot be said that the state exercised such coercive power or provided such significant encouragement to Defendants that Defendants' actions may be deemed those of the state; and (3) the functions that Defendants performed were not functions traditionally exclusively reserved to the state. [Id. at 9 (*citing* Blum v. Yaretsky, 457 U.S. 991, 1004 (1982))].

### 2. Plaintiffs

Plaintiffs respond that Defendants' analysis is fatally flawed because "it fails to consider the state's statutory duties, regulatory standards, or the relevant cases which are dispositive of the issue before the Court." [Doc. 76 at 1-2]. Plaintiffs direct the Court to New Mexico's Developmental Disabilities Act (DDA), the purpose of which is "to promote opportunities for all persons with developmental disabilities to live, work and participate with their peers in New Mexico communities." [Id. at 2 (*quoting* N.M. STAT. ANN. § 28-16A-2(A) (1978))]. Though the DDA allows the State Department of Health to delegate its duties by letting contracts to private entities such as CCM, the DDA nonetheless charges the state with the responsibilities of planning, providing, and coordinating support and services to the developmentally disabled. [Id. at 2-3]. According to Plaintiffs, Defendants' concession as to Rachel's substantive due process right to safe conditions of confinement and adequate medical care and nutrition, when considered in conjunction with the obligations imposed upon the state by the DDA, completely undermines Defendants' assertion that there

5

is not a sufficiently close nexus between Defendants' actions and the state to allow those actions to be treated as actions of the state itself. [Id. at 3].

Plaintiffs also dispute Defendants' assertion that CCM performed its duties autonomously from the state. [Doc. 76 at 4]. Pointing to Defendants' admission that Defendants are required to comply with standards and regulations set for the by the state relating to case management services, Plaintiffs attach a copy of service standards as promulgated by the State Department of Health, Long-term Services Division. [Id., Exh. 2, "New Mexico Department of Health Long Term Services Division, Medicaid Home and Community Based Waiver Services for the Developmentally Disabled, Service Standards"]. Explaining that these service standards require case managers to, among other things, (1) check, regulate, and document the quality of care and services delivered to assure proper implementation of a client's individual service plan (ISP); (2) determine that the goals of the ISP are being achieved; and (3) observe environments in an effort to note compliance with health and safety regulations and civil rights guarantees, Plaintiffs submit that it is Defendants' complete abrogation of duties such as these that is at the heart of this case. [Id. at 5].

Finally, Plaintiffs contend that even if this Court dismisses the 42 U.S.C. § 1983 claims, it may and should exercise supplemental jurisdiction over the remaining state claims. [Doc. 76 at 9]. Plaintiffs direct the Court to 28 U.S.C. § 1367, which provides, in pertinent part, that the district courts may decline to exercise supplemental jurisdiction if all claims over which the court had original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3).

However, Plaintiffs also cite authority for the proposition that a refusal to exercise supplemental jurisdiction may be unfair if dismissal of the original-jurisdiction claim comes late in the litigation and such judicial resources have already been committed that remanding the matter would likely cause a substantial duplication of effort. According to Plaintiffs, this case represents just such a situation. [Doc. 76 at 10-12].

### C. 42 U.S.C. § 1983 and the "State Action" Requirement

Section 1983 of Title 42 of the United States Code provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To sustain a claim for violations of § 1983, a plaintiff must demonstrate not just that she has been deprived of a right secured by the Constitution and the laws of the United States but also that this deprivation was caused by an individual or entity acting under color of state law. See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978). Where, as here, the defendant is neither a state official or a state employee but, rather, a private party or entity, the defendant may still be subject to § 1983 liability if the defendant can fairly be deemed a state actor. See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982).

"The [United States Supreme] Court has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case." Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995). For example, the Court sometimes

considers "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Id. (*quoting* Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)). The Court has also asked whether the state has "so far insinuated itself into a position of interdependence" with the private party, Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961), that there exists a "symbiotic relationship" between them. Gallagher, 49 F.3d at 1447 (*quoting* Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 175 (1972). The Court may conclude that state action is present when a private party is "a willful participant in joint activity with the State or its agents[.]" Id. (*quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). Lastly, state action may exist where a private entity exercises "powers traditionally exclusively reserved to the State." Id. (*quoting* Jackson, 419 U.S. at 352). However the analysis proceeds, the purpose of this "state action" requirement is to ensure "that constitutional standards are invoked only when it can be said that the State is **responsible** for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (emphasis in original).

In addition to directing the Court to the provisions of the New Mexico Developmental Disabilities Act, Plaintiffs rely on Giron v. Corrections Corp. of America, 14 F.Supp.2d 1245 (D.N.M. 1998) in support of their position that relevant case law dictates that Defendants be deemed state actors. [Doc. 76 at 6]. Giron involved the rape of a female inmate by a male prison guard in a correctional facility operated by a private corporation pursuant to a contractual agreement with the New Mexico Corrections Department. Giron, 14 F.Supp. 2d

at 1246-47. The defendant-guard, an employee of the operator-corporation, moved for summary judgment on the plaintiff-inmate's § 1983 claims on the ground that he was not a state actor. Id. at 1247-49. After characterizing the "truly unique function" of incarceration as one traditionally and exclusively reserved to the state, the court concluded that the defendant-guard was acting under color of state law at the time of the rape inasmuch as he was performing the "traditional state function" of checking on an inmate at the time of the acts in question. Id. at 1249.

Importantly, however, the court in Giron emphasized that the case before it was "distinguishable from those cases that involve the acts of private contractors who administer public contracts[, which] cases involve[] much more private functions . . . ." Giron, 14 F.Supp.2d at 1249. The instant action involves the sort of situation that Giron found distinguishable. Thus, I conclude that Giron does not stand for the precise rule for which Plaintiffs have cited it. [See Doc. 76 at 6, "Defendants' argument that their conduct cannot be treated as the conduct of the State fails because those duties imposed under the Act are imposed solely on the State, and as [the Giron court] noted, the attendant constitutional obligations cannot be avoided by contracting them out to the private sector."]. I nevertheless find Giron instructive, particularly when considered in conjunction with West v. Atkins, 487 U.S. 42 (1988) and Nieto v. Kapoor, 268 F.3d 1208 (10th Cir. 2001).

In West, the state of North Carolina contracted with a private physician to provide orthopedic services to inmates of the state prison system. West, 487 U.S. at 44. Because state law prohibited the inmate from seeking medical care from the provider of his choice,

9

he was forced to see the prison physician for a torn Achilles tendon. Id. at 43-44, n.2. Claiming inadequate treatment, the inmate later sued the physician pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth Amendment. The trial court entered summary judgment for the physician on the ground that, as a contract physician, he was not acting under color of state law when he treated the injured tendon. In an *en banc* decision, the Fourth Circuit affirmed. West v. Atkins, 815 F.2d 993, 996 (4th Cir. 1987). Reversing and remanding, the Supreme Court held that a physician employed by the state to provide medical services to state prison inmates acts under color of state law for purposes of § 1983 when undertaking his duties in treating an inmate's injury. See West, 487 U.S. at 55, 57-58.

In Nieto v. Kapoor, former employees of a public medical center radiation oncology department brought a § 1983 action against the supervising department director, alleging, *inter alia*, violations of the First and Fourteenth Amendments. Nieto, 268 F.3d at 1212. Plaintiffs prevailed at trial. Id. On appeal, the department director, who was not a medical-center employee but, instead, worked under contract to the center, argued that he should not have been deemed a state actor for purposes of 42 U.S.C. § 1983. Id. at 1215. Affirming, the Tenth Circuit stressed that "'[i]t is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State.'" Id. at 1216 (*quoting* West, 487 U.S. at 55-56). The court deemed the nature of the relationship between and among the inmate, the physician, and the state in West sufficiently analogous to the relationship between and among the former employees, the department director, and the state in the case before it to lead to the same conclusion.

10

Consequently, the court held that the state's decision to use a contract employee to perform certain supervisory duties did not relieve the state of its obligation to ensure that the protections of the Fourteenth Amendment extended to its employees. The court explained that, while not "incarcerated" in their jobs, the plaintiffs could not choose to whom they would answer or from whom they would take orders. Id.

In the instant action, I conclude that, under the circumstances, Defendants may fairly be considered state actors for purposes of Plaintiffs' 42 U.S.C. § 1983 claims. Consistent with Blum's mandate, I have carefully examined the allegations of constitutional deprivations as set forth in the pleadings. See Blum, 457 U.S. at 1003 ("Faithful adherence to the 'state action' requirement of the Fourteenth Amendment requires careful attention to the gravamen of the plaintiff's complaint."). Plaintiffs allege that CCM owed Rachel a duty of care to provide reasonably safe conditions of confinement at Wade House. Plaintiffs contend that CCM breached this duty by failing to ensure adequate screening, training, supervision, and discipline of its employees. [Doc. 68 at 10, ¶¶ i, j]. According to Plaintiffs, CCM's breach led to the medical neglect of Rachel and denial of such basic necessities as food, water, and required medications. As a result, Rachel had to be removed from Wade House and admitted to Lovelace Hospital with profound dehydration, hypernatremia, and hyperkalemia. [Id. at 10, 12, ¶¶ e, s]. Plaintiffs submit that this conduct reflects "a substantial departure from the standards of the profession and . . . an utter lack of professional judgment . . . ." [Id. at 12, ¶ s].

Like the injured inmate in West, Rachel is unable to choose her health care provider.

11

To be sure, Rachel requires complete personal care, as she is unable to care for herself. [Doc. 1; Exh. A at 4, ¶ 18(a), (b).]. As an individual with developmental disabilities, Rachel has been granted a developmental disabilities waiver for Medicaid Services. [Doc. 65 at 2]. The purpose of New Mexico's Developmental Disabilities Act is to promote opportunities for all persons with such disabilities to live, work, and participate with their peers in New Mexico communities. The DDA provides that "[p]riority shall be given to the development and implementation of support and services for persons with developmental disabilities that will enable and encourage them to . . . live in facilities located within their own communities and in contact with other persons living in their communities." § 28-16A-2. While the Mental Health and Developmental Disabilities Code (Mental Health Code) provides that all clients receiving residential treatment or habilitation services shall have the right to, among other things, (1) a nourishing, well-balanced, varied and appetizing diet; (2) prompt and adequate medical attention; and (3) a safe environment, the DDA authorizes the state to enter into contracts to carry out its duties. §§ 43-1-7; 28-16A-5. The DDA additionally imposes upon the state the duty to "develop and maintain a quality assurance system to improve and enhance the quality of support and services for persons with developmental disabilities." § 28-16A-14.

It is Defendants' function within this state system for the provision of care to developmentally disabled individuals and residential clients that determines whether their actions may fairly be attributed to the state. See West, 487 U.S. at 55-56; Nieto, 268 f.3d at 1216. With the enactment of the Mental Health Code and the DDA, the state has

undertaken to provide care and services to some of society's most medically fragile and dependent citizens. Indeed, priority is expressly given in the DDA to the development of a system by which those who meet its eligibility requirements will be enabled and encouraged to "achieve their greatest potential for independent and productive living." § 28-16A-2(A)(2). In light of the purposes to be served by the Mental Health Code and the DDA, the class of individuals meant to be benefitted by the legislation, and the duties imposed on the state therein, I find that the fact that the state may be authorized to carry out its duties through the use of contractors does not relieve the state of its obligation to safeguard the constitutional rights of those it serves. Accordingly, I conclude that the conduct of Defendants in this case may fairly be deemed conduct of the state itself.

### D. Defendants' Allegations With Respect to Plaintiffs' Inability to Meet Their Burden of Proof

Defendants also move for summary judgment on the ground that Plaintiffs are unable to meet their burden of proof. Defendants submit that Plaintiffs' § 1983 claim rests on negligence, but Plaintiffs cannot establish that Defendants's conduct substantially deviated from the appropriate standard of care. [Doc. 65 at 12-15]. Plaintiffs respond that their claims are founded primarily on duties imposed by statute, regulation, and contract. [Doc. 76 at 8-9]

As explained above, this Court directed the parties at the close of the pretrial conference in this matter to brief the issue of Defendants' status as state actors for purposes of § 1983. [See Doc. 62, "Clerk's Minutes," Oct. 5, 2004]. Defendants responded to the

13

Court's directive by filing a motion for summary judgment. [See generally Doc. 65]. Because the Court construes the state-actor issue as one implicating the Court's subject matter jurisdiction, the issue is addressed and disposed of herein. See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1076-77 (10th Cir. 1999) ("A defect in subject matter jurisdiction can never be waived and may be raised at any time."). However, the deadline for the filing of dispositive motions in this case was July 6, 2004. [See Doc. 16 at 26]. To the extent Defendants' motion addresses any issues other than Defendants' status as state actors for purposes of liability under 42 U.S.C. § 1983, the motion is hereby stricken as out of time. See D.N.M.LR.-Civ. 56.1(a) (providing that summary-judgment motion will not be considered unless filed within the deadline set in the Initial Pretrial Report).

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants CCM and Gabriella Ramos may be deemed state actors for purposes of Plaintiffs' 42 U.S.C. § 1983 claims. Thus, Defendants' motion is denied as to this issue. The remainder of Defendants' motion is stricken as out of time.

**IT IS, THEREFORE, ORDERED** that *Defendants' Cariño Case Management, Inc. and Gabriella Ramos' Motion for Summary Judgment on Counts III and IV Alleging Constitutional Rights Violations* is **DENIED** in part and **STRICKEN** in part.

**SO ORDERED** this 2nd day of November, 2004, in Albuquerque, New Mexico.

                                                                         _____
                                                                         **M. CHRISTINA ARMIJO**
                                                                         United States District Judge